

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1156-10

---

### THE STATE OF TEXAS

### v.

### JED JORDAN, Appellee

---

### On Discretionary Review of
### Case 03-09-00530-CR of the
### Third Court of Appeals,
### Travis County

---

Womack, J., delivered the opinion of the unanimous Court.

Appellee Jed Jordan was charged by information with misdemeanor Driving While

Intoxicated. Prior to trial, he moved to suppress evidence obtained upon execution of a warrant

for seizure of his blood. The trial court granted his motion and, upon the State's interlocutory

appeal, the Third Court of Appeals affirmed.[1] We granted review.[2]

---

[1] *State v. Jordan*, 315 S.W.3d 660 (Tex. App.–Austin 2010).

[2] On our own motion, we also granted review to consider whether the record must reflect the evidence suppressed before an appellate court may consider such an appeal. In light of our recent holding in *State v. Chupik*, PD 0960-10 (Tex. Cr. App. June 15, 2011), that the record need not reflect the evidence suppressed, we now dismiss

We hold that the Court of Appeals' analysis of the warrant affidavit failed to consider reasonable inferences that provided a substantial basis for the magistrate's determination of probable cause. We shall reverse the decisions of the courts below.

## I. Affidavit

A magistrate of the Municipal Court in Austin was presented with an Affidavit for Search Warrant in the early morning hours of June 6, 2008. In the affidavit, Austin Police Sergeant K. Suitt deposed that he or she had "good reason to believe that heretofore, on or about the 6th day of June, 2008, ... Jed Jordan ... did then and there commit [the offense of Driving While Intoxicated]." Suitt then deposed that he or she had probable cause for this belief by reason of certain facts. The facts listed by Suitt comprised observations by fellow police officers that the appellee drove the wrong way on a one-way street and exhibited various symptoms of intoxication, but the affidavit did not state specifically that the observations were made on June 6th. The affidavit was subscribed and sworn to before the magistrate on June 6th, and the magistrate issued a Search Warrant for Blood at 3:54 a.m. on that same date.

## II. Motion to Suppress

The appellee filed a pretrial motion to suppress evidence obtained by a search of the appellee's person pursuant to an invalid search warrant. At a hearing on the motion, the trial court stated that the magistrate made a reasonable and permissible inference that police observations were made on June 6th. However, the court stated that "time is a critical issue and needs to be specifically included in the facts of an affidavit for a warrant to seize somebody's blood in a DWI case." Because the affidavit did not state "the time that the observations of the

this ground for review as improvidently granted.

conduct of the defendant were made," the trial court granted the motion.

The Third Court of Appeals affirmed because the affidavit did not establish the *date* of

the observations:

> Suitt's statement in his affidavit that "I have good reason to believe that
> heretofore, on or about the 6th day of June, 2008 in the County of Travis and State
> of Texas, Jed Jordan ... did then and there commit" the offense of driving while
> intoxicated was not a statement of fact; it was merely a statement of the officer's
> belief. A police officer's conclusion that a crime has been committed does not
> give a magistrate a substantial basis for determining that probable cause exists. It
> is the facts giving rise to the officer's suspicion that are determinative, and the
> affidavit in this case was completely silent as to the date and time when Jordan
> was stopped by Forshee and observed by Gilbert, and when Gilbert passed on his
> information to Suitt. Therefore, although the facts contained in the affidavit were
> sufficient to warrant the conclusion that Jordan had been driving while intoxicated
> on some date, the affidavit contained no facts from which a reasonable inference
> could be drawn as to what that date was.[3]

The Court noted that it expressed no opinion as to whether the warrant would have been

insufficient for failure to specify the time even if the date had been properly established.[4]

## III. Standard of Review

The Fourth Amendment to the United States Constitution requires that "no warrants shall

issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." Under Article 18.01 of the Code of

Criminal Procedure, a search warrant may be obtained from a magistrate only after submission of

an affidavit setting forth substantial facts establishing probable cause.[5]

Probable cause exists if, under the totality of the circumstances set forth in the affidavit

---

[3] *Jordan*, 315 S.W.3d, at 663 (internal citations omitted).

[4] *Id.*, at 663 n.2.

[5] TEX. CODE CRIM. PROC. art. 18.01(b).

before the magistrate, there is a "fair probability"[6] that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued.[7] The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners.[8]

Reviewing courts give great deference to a magistrate's determination of probable cause.[9] "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[10]

---

[6] *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Flores*, 319 S.W.3d 697, 702 (Tex. Cr. App. 2010); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Cr. App. 2007).

[7] *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Cr. App. 1983) ("The facts submitted to the magistrate ... must be sufficient to justify the conclusion that the property that is the object of the search is probably on the premises to be searched *at the time the warrant issues*.") (emphasis in original); *Cassias v. State*, 719 S.W.2d 585, 588 (Tex. Cr. App. 1986).

[8] *Flores*, 319 S.W.3d, at 702; *Cassias*, 719 S.W.2d, at 588-89. In *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965), the Supreme Court described the flexibility that should be accorded to magistrates:

These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

[9] *Gates*, 462 U.S., at 236; *Rodriguez*, 232 S.W.3d, at 59-60.

[10] *Gates*, 462 U.S., at 238-39 (internal quotations omitted).

IV. Analysis

In this case the Court of Appeals analyzed separately the affiant's introductory statement and the subsequent description of facts, instead of considering the totality of the circumstances contained within the four corners of the affidavit. It is true, as the Court stated, that "a police officer's conclusion that a crime has been committed does not give a substantial basis for determining that probable cause exists."[11] For that proposition the Court cited *Gates*, which relied on *Nathanson v. United States*[12] and *Aguilar v. Texas*.[13] In both *Nathanson* and *Aguilar*, the problem was "bare bones"[14] affidavits providing only conclusory statements that an offense had been committed and evidence would be found at a particular location. The affidavits did not provide any underlying facts to allow the magistrate to make the judgment as to probable cause.

Under *Nathanson* and *Aguilar*, Suitt's introductory statement that an offense had been committed on June 6, 2008, would not be sufficient on its own to establish probable cause. But that does not mean that the introductory statement should not be considered in conjunction with the facts described below that statement. Testing the two parts of the affidavit separately for probable cause runs afoul of the Supreme Court's instruction to review the "totality of the circumstances"[15] set forth within the four corners of the affidavit.

In the present affidavit, Suitt first said that the appellee committed the offense of Driving

---

[11] *Jordan*, 315 S.W.3d, at 663.

[12] 290 U.S. 41 (1933).

[13] 378 U.S. 108 (1964).

[14] *Gates*, 462 U.S., at 239.

[15] *Gates*, 462 U.S., at 238.

While Intoxicated on June 6, 2008, and then described the driving and intoxication that constituted elements of that offense. The magistrate needed to know when the appellee was stopped in order to determine the probability that evidence of an offense would be found in the appellee's blood at the time the warrant issued. Under the facts and circumstances of this case, the affiant's introductory statement that the offense occurred on June 6, 2008, provided the magistrate with a substantial basis to infer that the driving and intoxication elements then described in the affidavit were observed on that same date.

An instructive contrast is found in *Garza v. State*.[16] In that Prohibition Era case, the affiants stated their belief that there was "on this date" a private dwelling owned by the appellant and that "whisky, wine, beer, mash, the same being intoxicating liquors, are illegally possessed, sold and manufactured in said private dwelling."[17] This belief was based on the following fact: "J.L. Cook says he personally saw a man leave the house aforementioned with some beer he claimed to have purchased therein."[18] The affidavit was found inadequate because nothing in the affidavit adequately described when the Cook observation took place – it could have occurred "at some remote date preceding the making of the affidavit."[19] Unlike the present case, the beer possession observed by Cook was offered to establish probable cause to believe that evidence of a separate possession offense would be found in the dwelling. In *Garza* it was therefore not a reasonable inference that the date of the Cook observation was the same as the date of the alleged

---

[16] 48 S.W.2d 625 (Tex. Cr. App. 1932) (op. on reh'g).

[17] *Id.*, at 626.

[18] *Id.*

[19] *Id.*, at 627.

offense.

The Court of Appeals also stated that *Schmidt* "contradicts any argument that a police officer's statement that he believes that events occurred on or about a certain date, without any facts to support that belief, is sufficient to support an inference that the events did occur on that date."[20] We find *Schmidt* to be distinguishable.

In *Schmidt*, officers sought a search warrant for a vehicle. The affiant alleged that Schmidt possessed cocaine "on or about the 9th day of April, 1980."[21] The affiant stated that he had "proba[b]le cause for said belief" by reason of certain facts.[22] Among those facts was that Schmidt "is presently under medical attention after being found in the above described vehicle, apparently in need of medical assistance. [An] ambulance was called and Tim Bell and Myra Stephens responded. When they arrived, … Schmidt told them that he had been sniffing cocaine since he left Florida to stay awake."[23]

We found that the affidavit was insufficient for the following reason:

> The affidavit … fails to state when the affiant received the information from Bell … or when Bell obtained his information. There is nothing in the affidavit to demonstrate when the incident it describes took place. The only reference to time in the affidavit is that the appellant "is presently under medical attention" after being "found" in the automobile. No assertion is made as to how long the appellant had been "under medical attention"-whether for a few hours or a few months.[24]

---

[20] *Jordan*, 315 S.W.3d, at 664.

[21] *Schmidt*, 659 S.W.2d, at 421.

[22] *Ibid.*

[23] *Ibid.*

[24] *Ibid.*

The problem in *Schmidt* was that the affiant described a series of events of indeterminate duration – from driving while sniffing cocaine, to finding the vehicle, to calling the ambulance, to providing medical treatment. The magistrate needed to know how much time elapsed between the events and the submission of the affidavit in order to determine the probability of evidence's being found in the vehicle when a warrant issued. But the only date given was that of the alleged possession, while the events supporting the allegation could have occurred at some remote time.

The present affidavit does not present the same problem as *Schmidt*. The observations of driving and intoxication described in the second part of the affidavit *were* the elements of the offense alleged in the first part of the affidavit. Under the circumstances of this case, it was a reasonable inference that the observations occurred on the same date that the offense was alleged to have occurred. We therefore hold that the Court of Appeals erred in failing to consider the totality of the circumstances contained within the four corners of the affidavit in reviewing the magistrate's basis for determining probable cause.

We also find that the magistrate had a substantial basis for determining probable cause despite the failure of the affiant to specify the *time* of the stop. Because the warrant was issued on June 6th at 3:54 a.m., less than four hours could have elapsed between the observation of the offense, the stop, and the issuance of the warrant.

The appellee argues, "When the length of time from the point of arrest stretches into hours, the less accurate the test of the sample will be on its face, and the testimony of the expert, if such evidence is even available, becomes even more speculative. And certainly not every case will provide enough facts for an expert to even venture an opinion about the defendant's level of intoxication at the time of the arrest using this method of 'retrograde extrapolation.'"

While we have recognized that "testing nearer in time to the time of the alleged offense increases the ability to determine the subject's offense-time BAC,"[25] retrograde extrapolation to a specific blood-alcohol concentration was not necessary for the appellee's blood to be evidence of a crime.[26] Evidence of any amount of alcohol, or any other substance or combination falling within the definition of "intoxicated" in Section 49.01(2) of the Penal Code, could be probative of intoxication because it would provide evidence that the appellee had introduced such a substance into his body.[27] Given the symptoms of intoxication described in the affidavit, we hold that the magistrate had a substantial basis to determine that evidence of intoxication would probably be found in the appellee's blood within four hours of the stop.

The appellee also argues that "if the sample is just being taken to show that [the appellee] had consumed alcohol[,] that would be merely cumulative evidence" because police had already determined that the appellee had consumed alcohol. The appellee fails to cite, nor do we know of, any authority for the proposition that evidence from a blood test is merely cumulative of field sobriety tests, or for the proposition that the potential for the collection of cumulative evidence should invalidate a magistrate's determination of probable cause.

We reverse the judgment of the Court of Appeals and remand to the trial court for further

---

[25] *Mata v. State*, 46 S.W.3d 902, 916 (Tex. Cr. App. 2001).

[26] *See Gates*, 462 U.S., at 238-39 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

[27] *See Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Cr. App. 2004) (breath-test results were relevant despite lack of retrograde extrapolation testimony because they provided evidence that Stewart had consumed alcohol); *Mechler v. State*, 153 S.W.3d 435, 440-42 (Tex. Cr. App. 2005) (breath-test results were not more prejudicial than probative despite lack of retrograde extrapolation testimony).

proceedings not inconsistent with this opinion.[28]

Delivered June 29, 2011.
Publish.

---

[28] Despite our holding, we note that the better practice is for affiants to specify the times of critical events described so that magistrates have more precise information with which to determine probable cause.