**Opinion filed August 9, 2012**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-10-00274-CR & 11-10-00275-CR
_____

### DARIUS LAMONT BRAWLEY, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. CR20556 & CR20557**

### MEMORANDUM OPINION

Appellant, Darius Lamont Brawley, pleaded guilty (1) in Cause No. 11-10-00274-CR to two counts of possession of a controlled substance in a drug-free zone and (2) in Cause No. 11-10-00275-CR to possession of marihuana in a drug-free zone. Both causes had an enhancement paragraph. Prior to the entry of his pleas, appellant filed motions to suppress evidence, alleging that there were deliberate falsehoods in the search warrant affidavit and that the judge who signed the search warrant was not a neutral and detached magistrate.

After a *Franks* hearing,[1] the trial court denied appellant's motions to suppress. Appellant entered his pleas, reserving his right to appeal the trial court's denial of his motions in both

_____

[1]*See Franks v. Delaware*, 438 U.S. 154 (1978).

causes to suppress. Following an agreed punishment recommendation, the trial court sentenced appellant in both causes to twenty years in the Texas Department of Criminal Justice, Institutional Division. Appellant timely appealed. We affirm.

*Standard of Review*

The Fourth Amendment to the United States Constitution requires that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Under Article 18.01 of the Code of Criminal Procedure, a search warrant may be obtained from a magistrate only after submission of an affidavit setting forth substantial facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2012); *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011).

Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a fair probability that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Jordan*, 342 S.W.3d at 569. Reviewing courts give great deference to a magistrate's determination of probable cause. *Gates*, 462 U.S. at 236; *Jordan*, 342 S.W.3d at 569. As a reviewing court, our duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238–39; *Jordan*, 342 S.W.3d at 569.

A magistrate may interpret the affidavit in a nontechnical, commonsense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners. As the Court of Criminal Appeals noted in *Jordan*, the United States Supreme Court explained the reasoning behind according flexibility to magistrates as follows:

> [Affidavits for search warrants] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Jordan*, 342 S.W.3d at 569 n.8 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Appellant's argument is not that the affidavit is insufficient on its face. His argument is that Officer Carlisle Gover made false statements knowingly, intentionally, or with reckless disregard for the truth. In *Franks v. Delaware*, the United States Supreme Court held that, if a

defendant established by a preponderance of the evidence that a false statement made knowingly, intentionally, or with reckless disregard for the truth was included in a probable cause affidavit and if the statement was material to establish probable cause, the false material must be excised from the affidavit. *Franks*, 438 U.S. at 164–65; *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded. *Franks*, 438 U.S. at 155–56; *Harris*, 227 S.W.3d at 85; *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 705 (Tex. App.—El Paso 2009, no pet.).

A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not make the warrant invalid. *Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987). At the *Franks* hearing in this case, appellant and the State presented evidence. As the sole factfinder and judge of the witnesses' credibility and weight of the evidence, the trial court is owed great deference, and its ruling will be overruled only if outside the bounds of reasonable disagreement. *Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex. Crim. App. 1999); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996).

The *Franks* Court set out a difficult burden for a defendant. The defendant must first establish that the affiant made a false statement knowingly, intentionally, or with reckless disregard for the truth in the affidavit and that the false statement was necessary to the finding of probable cause. *See Harris*, 227 S.W.3d at 85. A proven misstatement can vitiate an affidavit only if it is established that it was the product of a deliberate falsehood or of a reckless disregard for the truth. *Garza v. State*, 161 S.W.3d 636 (Tex. App.—San Antonio 2005, no pet.). The defendant must then establish that, when the false information is set aside, the affidavit's remaining content is insufficient to establish probable cause. The challenge concerning the allegedly false statement must be to the veracity of the affiant and not to the veracity of the persons who provided information to the affiant. *See United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989) ("It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit."); Thomas K. Clancy, THE FOURTH AMENDMENT (2008). Truthful in this context does not mean letter-perfect but rather that the information put forth in the affidavit is believed or appropriately accepted by the affiant as true. *Clement v. State*, 64 S.W.3d 588 (Tex. App.—Texarkana 2001, pet. ref'd).

*The Affidavit*

In appellant's first point of error, he complains that the trial court erred in denying his motion to suppress the search warrant because Officer Gover's affidavit contained deliberate falsehoods. In his affidavit, Officer Gover set out the following facts to demonstrate that the confidential informant was credible, reliable, and trustworthy:

1. That your affiant has known this same confidential informant for a period of less than one (1) year. That this same confidential informant has provided information to your affiant in the past in reference to drug offenders in Brown County area that has always proven to be true and correct. The confidential informant [has] also given affiant specific information related to drug offenders which included types of narcotics sold by specific offenders, packaging used, methods of transportation and concealment locations which has proven to be true and correct.

2. That this same confidential informant has voluntarily admitted the informant's own prior abuse of drugs to your affiant, however, this informant no longer condones the abuse of drugs.

3. That this same confidential informant knows what crack cocaine looks like in its various forms, including the Packaging, and can identify it as such.

4. Through information provided by this same confidential informant, your affiant has seized a quantity of crack cocaine in the past.

   That within the past 72 hours this same confidential informant has been at the above described suspected place and observed the suspected party, in possession of a quantity of crack cocaine. Confidential informant also advised that the Suspected Party [Donnie Darlene Harrell] was actively distributing crack cocaine at the suspected place. When the confidential informant left suspected place the suspected party was still in possession of a quantity of crack cocaine.

The suspected party in Officer Gover's affidavit, the person who possessed cocaine and paraphernalia for distribution, was Donnie Darlene Harrell, and the suspected place was her residence at 806 W. Austin Avenue in Brownwood. Appellant was not named in the affidavit, but was at the residence with drugs when the search warrant was executed on May 11, 2009.

Appellant first called Harrell to demonstrate that he had standing to challenge the search warrant. Harrell testified that she rented the 806 W. Austin Avenue residence and that appellant was an overnight guest who arrived shortly after midnight early in the morning of May 11. She testified that she could not be certain as to the time appellant arrived because "it was Mother's

Day and [she] had been drinking." Harrell said that appellant came in with a black bag "or something like that." The trial court ultimately held that appellant had standing to challenge the search warrant.

Shelley Demyan, the confidential informant, was the only witness called by appellant to demonstrate that there were false statements in Officer Gover's affidavit. Demyan acknowledged that she had had a drug problem since she was nineteen and that she had been in various treatment programs during the past thirteen years. She met Officer Gover around May 3 or 4, or about a week prior to May 10. She had called the police because someone had threatened her life and there were drugs involved. The officers suggested that she talk with Officer Gover. She and Officer Gover discussed the man who had threatened her life, and Officer Gover ultimately asked her if she would be interested in working with him. She wanted a day to think about his proposal.

The next day, Demyan agreed to work with him because the man who threatened her was in the drug culture and because she felt that Officer Gover could help get her out of that culture. At their second meeting, she discussed with Officer Gover the people involved in the drug trade in Brown and Coleman Counties. They talked "extensively about those people," and she named names to the best of her ability. She also said that methamphetamine was the first drug for her, and that she had moved to crack cocaine about ten years ago. She knew what cocaine looked like and had seen it numerous times. After the second visit, she and Officer Gover talked on a regular basis during the next few days.

Demyan testified that she provided information on or about May 11 to Officer Gover concerning the activity at 806 W. Austin Avenue, specifically with regard to Harrell who lives there. She testified that she bought $80 worth of crack cocaine, using a computer for payment, in the evening of Sunday, May 10, 2009. She smoked part of her cocaine with Harrell in Harrell's bedroom and left the rest with Harrell.

About three hours after she left Harrell's residence, she called Officer Gover and told him that she "had fell off the wagon." He lectured her and asked, "Why would you do such a thing?" He then asked her what she had seen. She told him that she had seen an amount of crack cocaine at the residence that was in addition to her buy and that there was still crack cocaine at the residence. She denied that she was under the influence of cocaine when she called Officer Gover and said that she did not condone the use of drugs.

5

Demyan testified that, before her voluntary buy at Harrell's residence, she made an undercover buy for Officer Gover "when [she] was being qualified" to work for Officer Gover. She bought about $60 worth of crack cocaine through Teresa Graves from a man named Fresh. Graves was not arrested at the time of the buy, but was arrested later. Demyan could not remember if she made more undercover buys but did not think that she had. She reiterated several times that she does not condone drug usage, but she acknowledged her addiction. She also testified that everything she told Officer Gover concerning the activities at Harrell's house was true.

It is not entirely clear from whom Demyan purchased $80 worth of crack cocaine in Harrell's residence. Late in her testimony, she said that she had picked up Harrell and that they went to Harrell's house where she purchased the crack cocaine from appellant using her computer as payment. She said that the crack cocaine appellant sold her came from a plastic baggie in his lap. When pressed, however, she said that she did not remember what appellant looked like, and she could not identify him in court. Although appellant's counsel thought that Demyan had earlier said that Harrell had sold the crack cocaine to her, it appears from the record that Demyan was correct when she stated that she had not made that statement. Demyan had testified only that she had smoked crack cocaine with Harrell.

Demyan testified that she saw pipes at Harrell's residence, and two metal crack pipes were found under a pillow in Harrell's bedroom. Demyan testified that the man who sold her crack cocaine took it from a plastic baggie, and officers found a clear plastic baggie containing white residue in the living room in an astray on the coffee table. Two laptop computers were found in appellant's vehicle.

Appellant listed five allegedly false statements made in Officer Gover's affidavit concerning the confidential informant:

(1) That your affiant has known the same confidential informant for a period of less than one (1) year.

(2) That this same confidential informant has provided information to your affiant in the past in reference to drug offenders in Brown County area that has always proven to be true and correct. The confidential informant [has] also given affiant specific information related to drug offenders which included types of narcotics sold by specific offenders, packaging used, methods of transportation and concealment locations which has proven to be true and correct.

(3) That this same confidential informant has voluntarily admitted the informant's own prior abuse of drugs to your affiant, however, this informant no longer condones the abuse of drugs.

(4) Through information provided by this same confidential informant, your affiant has seized a quantity of crack cocaine in the past.

(5) That within the past 72 hours this same confidential informant has been at the above described suspected place and observed the suspected party in possession of a quantity of crack cocaine. Confidential informant also advised that Suspected Party was actively distributing crack cocaine at the suspected place. When the confidential informant left suspected place, the suspected party was still in possession of a quantity of crack cocaine.

Appellant argues that Officer Gover intentionally misled the magistrate in stating in his affidavit that he had known Demyan for "less than one (1) year." That was a true statement but was misleading. Officer Gover had known Demyan for just over a week, having met her because of the death threat she received from a man involved in the drug culture. Appellant points out that Demyan testified that she and Officer Gover had perhaps five five-minute conversations during the week. She admitted that she was intoxicated during two of them; however, she maintained that she remembered what was discussed during those conversations. Under *Franks*, appellant had to establish that Officer Gover made a material false statement intentionally or with reckless disregard for the truth. Although Officer Gover was at the hearing, appellant chose not to call him to determine what he knew and believed about Demyan's credibility and information at the time he was drafting the affidavit. The fact that Demyan had made an undercover controlled buy from Graves and had earlier discussed the Brownwood drug trade extensively with Officer Gover would indicate that she underestimated the time spent with Officer Gover. Officer Gover's statement of "less than one (1) year" was not false, and we cannot say that appellant met his burden under *Franks*.

Appellant's only argument concerning the second statement is that Demyan initially told appellant's investigator that she had not furnished such information. After being reminded by Officer Gover, Demyan testified that she had given such information and had made an undercover buy of crack cocaine from Graves. Demyan also testified that, during her second visit with Officer Gover, she had given him information about people involved in the drug trade in Brown and Coleman counties and that she had named them to the best of her ability.

7

Appellant failed to show that the second statement was false. Appellant did not meet his burden concerning the second statement.

As to the third statement, Demyan testified that she agreed to work with Officer Gover because he would help her get out of the drug culture. She consistently testified that she did not condone the use of drugs but that she was addicted to crack cocaine. Appellant argues that Demyan was using cocaine prior to calling Officer Gover on May 10 and that he did not aver that Demyan was under the influence of drugs when she provided him with information that there were drugs at the residence. Demyan's actual testimony was that she did not smoke all of the crack cocaine but left some with Harrell, that she did not call Officer Gover until three hours had passed after she smoked the cocaine, and that she was not under the influence of the crack cocaine at the time of her call. Appellant also argues that Officer Gover did not aver that Demyan had been intoxicated on two of the five occasions that she had spoken with Officer Gover. Demyan admitted telling appellant's investigator that she had been intoxicated on the two occasions but that she remembered what she told Officer Gover. The trial court was the judge of her credibility. Appellant did not show the third statement to be false.

The challenged fourth statement was that, through "information provided by this same confidential informant, your affiant has seized a quantity of crack cocaine in the past." Appellant acknowledged that the testimony from Demyan was conflicting: she first testified that Graves was not arrested and then testified that Graves was arrested. The record reflects that Demyan was asked about her undercover buy, and she testified that she bought an amount through Graves from a "gentleman named Fresh." The amount of money was $60. The next question was: "Now, did they arrest Mrs. Graves?" Her answer was: "No, sir." Two questions later, she was asked if "they ever arrest[ed] Mrs. Graves?" Her answer was: "Yes, sir." Apparently, Demyan was stating that Graves was not arrested when Demyan made the undercover buy but that Graves was later arrested. Her testimony does not appear to be in conflict.

The State, however, stated in its brief that "Demyan's controlled buy from Graves did lead to Graves's arrest, but the arrest was not effectuated until after May 11, 2009." There was no date for Graves's arrest mentioned in the record. If Officer Gover was only referring in his affidavit to a seizure of crack cocaine from Graves, then his statement would be false. But appellant did not call Officer Gover as a witness despite his presence at the hearing. Demyan

8

testified that she thoroughly discussed the drug trade in Brown and Coleman County during their second conversation. Appellant could have easily inquired from Officer Gover if the police or sheriff's department had seized any crack cocaine or made any arrests prior to May 11 based on information supplied by Demyan. It was not the State's burden to prove the truth and accuracy of Officer Gover's statements; it was appellant's burden to prove that Officer Gover's statements were false. But even if Graves's arrest was the only seizure based on information from Demyan, appellant failed to prove that Officer Gover's fourth statement was an intentional false statement or made with reckless disregard for the truth.

The fifth statement challenged by appellant refers to Demyan being at Harrell's residence within seventy-two hours of the time of Officer Gover's affidavit. Demyan testified that she bought and smoked crack cocaine in Harrell's bedroom on May 10; the search warrant was executed on May 11. Appellant points out that Demyan testified that she did not see any drug paraphernalia to support Officer Gover's statement that the "Suspected Party [Harrell] was actively distributing crack cocaine in the suspected place." However, Demyan testified that she went to Harrell's residence to purchase crack cocaine on May 10 and purchased $80 worth. Obviously, whoever sold the cocaine to Demyan was distributing cocaine, and it was distributed in Harrell's residence.

Appellant stated in his brief that "Demyan's and Harrell's uncontroverted testimony establishes that the Appellant was not at the Residence when Demyan and Harrell purchased and smoked the crack cocaine on May 10, 2009." That is not an accurate reflection of the record. Harrell testified that she believed appellant arrived shortly after midnight that night, but she could not be certain because "it was Mother's Day and [she] had been drinking." Harrell said that appellant came in with a black bag "or something like that." Harrell made no mention of Demyan's visit during her testimony. Demyan was not specific as to the time that evening when she purchased and smoked the crack cocaine in Harrell's bedroom. At that point in her testimony, Demyan also testified that "[t]here was somebody present that was in another room, but [she did] not remember who it was." Later, Demyan testified that she purchased the cocaine from appellant, but then said that she could not identify him in court as the seller. Harrell's testimony did not establish that appellant and Demyan were not at her residence at the same time. And Demyan's testimony was that she purchased the crack cocaine from a man but that she could not identify him.

Demyan's testimony supported Officer Gover's statement that Demyan "observed the suspected party [Harrell], in possession of a quantity of crack cocaine." Demyan testified that crack cocaine was being distributed at the residence (Demyan bought some), but it is unclear from Demyan's testimony what role Harrell had in the cocaine sold to Demyan. However, Demyan was clear that, when she left the residence, Harrell was still in possession of a quantity of Demyan's crack cocaine. Demyan also clearly testified that she told Officer Gover that she saw an amount of crack cocaine at Harrell's residence that was in addition to the crack cocaine she bought.

Appellant argues that this case is similar to the facts in *Hass v. State*, 790 S.W.2d 609 (Tex. Crim. App. 1990). We disagree. That case involved an affiant who claimed in the affidavit to have seen certain transactions that he was in no position to see. The officer was a witness and admitted that another officer had made the observations and that he had not personally observed the transactions. Although Officer Gover was at the hearing in this case, he was not called to be a witness concerning the statements in his affidavit.

In summary, appellant has not met his *Franks* burden on any of the statements in Officer Gover's affidavit. It is significant that appellant did not call Officer Gover as a witness. Appellant was required to first show that a statement was false and then establish that Officer Gover made the false statement intentionally or with reckless disregard for the truth and that the false statement was material to probable cause. As the sole factfinder and judge of the witnesses' credibility and weight of the evidence, the trial court below is owed great deference. Its ruling that appellant failed to meet the *Franks* burden was not outside the bounds of reasonable disagreement. *See Hinojosa*, 4 S.W.3d at 247; *Janecka*, 937 S.W.2d at 462. Appellant's first point of error is overruled.

*Neutral and Detached Magistrate*

In appellant's second point of error, he argues that the trial court erred in denying his motion to suppress because the magistrate who signed the warrant, Judge Frank Griffin, was not neutral and detached. His only evidence was the following statement in the warrant:

> During a drive-by surveillance I observed that the Google Earth downloaded image is similar to the location to be searched which is hereby incorporated as if set out fully, (hereinafter referred to as the **SUSPECTED PLACE**) located at 806 W. Austin Ave. Brownwood, Brown County, Texas which said above mentioned **SUSPECTED PARTY** now possesses, occupies, controls and has charge of.

10

Appellant argues that this statement indicated that the magistrate allowed himself to be a part of (rather than detached from) the police operation; therefore, the magistrate was not neutral and detached.

The State called Officer Gover as a witness. The State had also subpoenaed Judge Griffin, the Brown County Court at Law judge, but the trial court expressed its desire that Judge Griffin be called only if it was absolutely necessary. Officer Gover testified that he prepared both the affidavit and the search warrant, which he routinely does when obtaining a search warrant. Officer Gover testified that the above language was a "cut and paste" mistake. He personally took the warrant to Judge Griffin for signature. For clarification, the trial court then asked the following question:

> This is in the first person, and it is signed by the magistrate. Are you saying that -- that the magistrate, to your knowledge, never drove by this location and that that is just an error and you meant it to be, "I," meaning you and not "I" meaning Frank Griffin?

Officer Gover answered, "Yes, sir." The trial court then asked Officer Gover if the magistrate had participated in the search or its preliminaries in any way, and Officer Gover said that, to his knowledge, Judge Griffin had not. During cross-examination, Officer Gover again stated that he conducted the drive-by of the location, but admitted the language was not in his affidavit.

Appellant urges this court to note that there was no "drive-by" language in the affidavit and asks how this could have been a cut and paste error when the language "first appears in the search warrant itself and is absent from the search warrant affidavit." Apparently, appellant has never mistakenly hit "cut" instead of "copy" using a computer. It is reasonable to believe that the language was in the affidavit and that Officer Gover intended to copy the language to the warrant and modify the phrase by substituting "affiant" for "I." The affidavit gave the address and stated that "Exhibit A is a diagram and photograph of the location to be searched which is hereby incorporated by reference as if set out fully." Exhibit A was a picture of the house with "Google" noted in the bottom right-hand corner. The same Exhibit A was attached to the warrant.

In the alternative, appellant argues that Judge Griffin must not have read the warrant affidavit and the search warrant when Officer Gover presented the warrant to him for signature. Therefore, the magistrate in this case was no more than a "rubber stamp for the police." We disagree. Judge Griffin may simply have read the warrant too rapidly. A simple substitution of

"affiant" for "I" would have corrected the warrant to accord with Officer Gover's testimony. Appellant's assertion that the magistrate was a "rubber stamp" is simply that—an assertion. *See Mayfield v. State*, 800 S.W.2d 932, 935–36 (Tex. App.—San Antonio 1990, no pet.).

The trial court concluded that the language was a typographical error "in the cut-and-paste world of computers" and held that there was insufficient evidence to demonstrate that the magistrate was not neutral and detached. Appellant's second point of error is overruled.

*This Court's Ruling*

The judgments of the trial court are affirmed.


TERRY McCALL

JUSTICE


August 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

12