

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00450-CR

Maria Paula **RODRIGUEZ-GARZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2022CRN000913D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
            H. Todd McCray, Justice
            Velia J. Meza, Justice

Delivered and Filed: September 30, 2025

AFFIRMED

In two issues, appellant Maria Paula Rodriguez-Garza appeals her conviction for intoxication assault with a vehicle contending the trial court erred by denying her motion to suppress. We affirm.

### BACKGROUND

Rodriguez-Garza was in a motor vehicle accident wherein she hit and severely injured a motorcyclist with her vehicle. Detective Estefania Gonzalez investigated the cause of the accident

and suspected Rodriguez-Garza was under the influence of alcohol. When Rodriguez-Garza declined to take field sobriety tests, take a breathalyzer, or consent to a blood draw, Detective Gonzalez obtained a warrant to draw her blood for a toxicology analysis. The toxicology analysis showed that Rodriguez-Garza's blood-alcohol concentration was 0.113 (+/- 0.005) grams of alcohol per 100 milliliters of blood.

The State indicted Rodriguez-Garza with intoxication assault with a vehicle. *See* TEX. PENAL CODE ANN. § 49.07(a)(1). Rodriguez-Garza moved to suppress evidence of the blood draw that indicated she was intoxicated the night of the accident, arguing that the search warrant affidavit (the "affidavit") supporting the search warrant application did not establish probable cause. After the trial court denied Rodriguez-Garza's motion to suppress, Rodriguez-Garza pled guilty to the charged offense. The trial court found Rodriguez-Garza guilty of intoxication assault with a vehicle, assessed her punishment at eight years' confinement, suspended the sentence, and placed her on community supervision for eight years. The trial court filed findings of fact and conclusions of law supporting its denial of Rodriguez-Garza's motion to suppress. Rodriguez-Garza appeals the trial court's order denying her motion to suppress.

### SUFFICIENCY OF SEARCH WARRANT AFFIDAVIT

On appeal, Rodriguez-Garza contends Detective Gonzalez made false statements in the affidavit she provided to the magistrate to request a blood search warrant (the "search warrant"). Rodriguez-Garza argues in two issues that the trial court erred by (1) failing to excise the material, false statements before determining the existence of probable cause, and (2) denying her motion to suppress after Detective Gonzalez allegedly testified at the suppression hearing she made false statements in her affidavit to support the probable cause for the search warrant. Because these

issues are interrelated in our determination of whether the trial court erred by denying Rodriguez-Garza's motion to suppress, we address them together.

## A. Standard of Review and Applicable Law

The "[i]ssuance of a search warrant depends on probable cause." *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021); *see also* TEX. CODE CRIM. PROC. ANN. art. 18.01(b) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance."). Probable cause exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). "This is a flexible, non-demanding standard." *Id.* "Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023).

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress, giving almost total deference to the trial court's determination of historical facts that are supported by the record and reviewing de novo the application of the law to the facts. *State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024). However, "[i]n determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit." *Hyland v. State*, 574 S.W.3d 904, 910–11 (Tex. Crim. App. 2019). "The test is whether a reasonable reading of the supporting affidavit provides a substantial basis for the magistrate's conclusion that probable cause existed." *Diaz*, 632 S.W.3d at 892. "The

affidavit must contain sufficient information to allow the issuing magistrate to determine independently whether probable cause exists because the magistrate's decision 'cannot be a mere ratification of the bare conclusions of others.'" *Gonzales v. State*, 481 S.W.3d 300, 306 (Tex. App.—San Antonio 2015, no pet.) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

Generally, a reviewing court applies a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause. *See Hyland*, 574 S.W.3d at 911. "As a result, when reviewing a magistrate's probable cause determination, a reviewing court . . . must ordinarily view the magistrate's decision to issue the warrant with great deference." *Id.* (internal quotations omitted); *see also Baldwin*, 664 S.W.3d at 130 ("Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process."). We do not analyze affidavits in a "hyper-technical manner." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Rather, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Id*. (internal quotations omitted).

"When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Baldwin*, 664 S.W.3d at 130. We do not focus on other facts that could or should have been included in the affidavit; instead, we focus on "the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012); *see also State v. Jordan*, 342 S.W.3d 565, 570–71 (Tex. Crim. App. 2011) (stating courts should consider "the totality of the circumstances contained within the four corners of the affidavit" rather than analyze separate statements in the affidavit in isolation).

Nevertheless, "'where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by

the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.'" *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). Because "[a]n affidavit supporting a search warrant begins with a presumption of validity . . . the defendant has the burden of making a preliminary showing of deliberate falsehoods in that affidavit before he is entitled to a *Franks* hearing." *Cates*, 120 S.W.3d at 355. To satisfy his burden, "[t]he defendant must: (1) [a]llege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) [a]ccompany these allegations with an offer of proof stating the supporting reasons; and (3) [s]how that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant." *Id*. at 356 (internal quotations omitted).

When conducting its re-examination, "the reviewing court should no longer give deference to the magistrate's initial probable cause determination—and should therefore abandon the usual substantial basis analysis—because the reviewing court is now examining a new, different affidavit." *Hyland*, 574 S.W.3d at 911 (internal quotations omitted). "The question for the reviewing court becomes the same as it would be for a magistrate conducting an initial review of a search warrant affidavit: Whether the remaining statements in the affidavit establish probable cause." *Id*. "In resolving that question, reviewing courts are still required to read the purged affidavit in accordance with *Illinois v. Gates*, and must therefore undertake a totality-of-the-circumstances approach." *Id*. (alterations and internal quotations omitted); *see also Gates*, 462 U.S. at 235–36, 238.

## B. Relevant Facts

### 1. Search Warrant Affidavit

Detective Gonzalez prepared the affidavit requesting the magistrate issue a search warrant to draw Rodriguez-Garza's blood. The affidavit was based on Detective Gonzalez's opinion that Rodriguez-Garza "was intoxicated while operating a motor vehicle," and included the following detailed account of Detective Gonzalez's investigation until the time she requested the search warrant. Detective Gonzalez noted that after Rodriguez-Garza began explaining the accident, she said "that somehow she just saw the motorcycle in front of her and they collided." Then, importantly, Detective Gonzalez stated that upon coming into contact with Rodriguez-Garza, Detective Gonzalez "immediately detected an odor of an alcoholic beverage coming from [Rodriguez-Garza's] breath" and Rodriguez-Garza "began slurring her words when she was identifying herself." Detective Gonzalez read Rodriguez-Garza her *Miranda*[1] warnings. Rodriguez-Garza "stated she was coming from TKO (sport's bar) before the accident[,]" and "had 1 beer" before she left. After Rodriguez-Garza expressed her desire to go home, Detective Gonzalez asked her "if she was willing to continue the interview at the station and provide a sample of blood if needed at the hospital to which [Rodriguez-Garza] state[d] she would be willing to continue at the police station but not the hospital."

According to the affidavit, once at the police department, Detective Gonzalez continued the interview with Rodriguez-Garza and "observed her eyes were pink and glossy." "The odor of the alcoholic beverage also became more apparent inside the interview room and [Rodriguez-Garza] continued slurring her words as she spoke." Rodriguez-Garza tried to again explain to Detective Gonzalez how the accident occurred but could not do so clearly. After Detective

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Gonzalez asked Rodriguez-Garza "if she was willing to participate in field sobriety tests, or provide a sample of breath or blood[,]" Rodriguez-Garza stated "she had been advised to not participate in any tests until she had an attorney."

The affidavit also included checklists of observations Detective Gonzalez made about Rodriguez-Garza. Detective Gonzalez did not complete every checklist, but indicated she detected a moderate odor of alcohol from Rodriguez-Garza; red/pink and glassy eyes; as well as "[t]hick-tongued[,]" slurred, and slow speech. Detective Gonzalez also indicated that Rodriguez-Garza's attitude or conduct was "sleepy/drowsy" and polite.

Detective Gonzalez also checked the "[r]efused to perform test" box for each individual Standardized Field Sobriety Test ("SFST"). With respect to oral statements made by Rodriguez-Garza, Detective Gonzalez wrote, "Suspect made a statement that she had consumed 1 beer." Detective Gonzalez also checked the box indicating Rodriguez-Garza "refused to provide a sample of breath and/or blood" under the "Refusal evidence" section indicating what the suspect chose "[a]fter placing the suspect under arrest and reading the DIC-24/DIC-24S (Statutory Warning).[2]"

### 2. Suppression Hearing Evidence

At the suppression hearing, Detective Gonzalez testified she was called to the scene of an accident because of the severity of the injuries involved. Detective Gonzalez wore an audio-recording device, and the recording was admitted into evidence. Upon arriving to the scene of the accident, Detective Gonzalez initially spoke with one of the police officers and asked him whether he detected any signs of intoxication. The officer answered there was none. However, when Detective Gonzalez approached and began to speak with Rodriguez-Garza, Detective Gonzalez detected the smell of alcohol and noticed that Rodriguez-Garza was slurring her speech.

---

[2] *See* TEX. TRANSP. CODE ANN. § 724.015.

Rodriguez-Garza also told Detective Gonzalez she was coming from TKO, a known sports bar, and only had one beer and ate a meal. Because Detective Gonzalez concluded there were signs of intoxication, she read Rodriguez-Garza her *Miranda* warnings, told her she was not under arrest, and continued speaking with her.

At that point, Detective Gonzalez asked Rodriguez-Garza if she would provide a breath or blood sample, to which she said, "Okay," but then added she wanted to go home. After Detective Gonzalez explained to Rodriguez-Garza that she could not go home because she was being detained for further investigation, Detective Gonzalez repeated the question of where she preferred to go. Rodriguez-Garza responded by telling Detective Gonzalez she would go to the police station. Detective Gonzalez testified that at that time she believed she had probable cause to obtain a search warrant, telling her colleagues at the accident scene that she may need to get one because Rodriguez-Garza may not consent once she is transported to the police station.

Once Rodriguez-Garza was brought to an interview room at the police station, Detective Gonzalez asked her some basic questions and then asked her if she was willing to go with the officers "to do some tests to determine sobriety." Rodriguez-Garza told Detective Gonzalez in Spanish that "they told [her] not to go until" her attorney was there, which Detective Gonzalez understood as a refusal to do the SFSTs. Rodriguez-Garza did not consent to the Intoxilyzer or a blood draw either. Rodriguez-Garza also could not explain to Detective Gonzalez how the accident occurred.

Detective Gonzalez then prepared the affidavit, and the magistrate signed the search warrant. Detective Gonzalez had officers transport Rodriguez-Garza to the hospital to execute the search warrant by obtaining a blood draw. Following her return to the police station, Rodriguez-Garza was released.

During cross-examination, Detective Gonzalez explained she did not conduct the SFSTs at the accident scene because she usually tries to collect blood with consent. Moreover, Detective Gonzalez stated she did not read or utilize the forms usually associated with intoxication offenses—DIC-23, DIC-24, and DIC-25 that explain to the driver that he or she is being arrested for an offense involving the operation of a vehicle (in this case) while suspected of being intoxicated, the consequences of refusing to provide either a breath or blood sample, and the temporary licenses that may be available after arrest—because Rodriguez-Garza was not under arrest.

As mentioned above, Detective Gonalez's affidavit checked the refusal box for each individual SFST indicating Rodriguez-Garza refused to perform that individual test. At the hearing, Detective Gonzalez clarified that although she checked the refusal box for each individual SFST, this was not a false statement because it was simply a representation of Rodriguez-Garza's categorical refusal to do any "tests." Detective Gonzalez acknowledged Rodriguez-Garza may not have realized she was being asked to perform specific SFSTs rather than provide a breath sample. Moreover, Detective Gonzalez acknowledged that she did not read or present the DIC-24 warnings when Rodriguez-Garza refused to provide a breath or blood sample, and so the affidavit indicating the statutory warnings were provided was a false statement. However, Detective Gonzalez reiterated she did not use the forms because Rodriguez-Garza was not being arrested that night.

## C. *Findings of Fact and Conclusions of Law*

Following the trial court's denial of Rodriguez-Garza's motion to suppress, the trial court issued its findings of fact and conclusions of law. The relevant portions of the trial court's findings of fact include the following facts:

- Rodriguez-Garza was involved in a vehicle accident with a motorcyclist resulting in critical injuries to the motorcyclist.

- During initial questioning, Rodriguez-Garza "could not articulate exactly how the accident occurred."

- When Detective Gonzalez interviewed Rodriguez-Garza, "Detective Gonzalez immediately detected an odor of alcohol coming from [Rodriguez-Garza's] breath, identified slurred speech, and glossy eyes."

- Rodriguez-Garza admitted "that just prior to the accident, she was coming from TKO Sports Bar where she consumed alcohol."

- Detective Gonzalez read Rodriguez-Garza her *Miranda* rights.

- "Detective Gonzalez then asks [Rodriguez-Garza] for consent to gather a sample of her breath alcohol content or blood sample. Detective Gonzalez asks [Rodriguez-Garza] which she prefers and [Rodriguez-Garza] replies 'ok[.]'''

- "[Rodriguez-Garza] then indicates she wants to go home and Detective Gonzalez explains that she's detained until the investigation is completed."

- "[Rodriguez-Garza] is then asked about her preference of going to the hospital or the police station and she states she would rather go to the police station."

- While Rodriguez-Garza is being transported to the police station, Detective Gonzalez is heard on the police radio that she suspects Rodriguez-Garza is intoxicated.

- In the interview room at the police station, Detective Gonzalez asked Rodriguez-Garza "if she is willing to do some exams to determine how intoxicated she is[,]" to which she responds "no to these exams (standard field sobriety tests)."

- When asked whether she is willing to provide a breath or blood sample, Rodriguez-Garza shook her head indicating that she was not willing to consent to providing Detective Gonzalez either a breath or blood sample.

- Believing Rodriguez-Garza would no longer cooperate with the investigation, Detective Gonzalez "inserted the details uncovered from her investigation into a search warrant application and the warrant was signed . . . ."

The trial court made the following applicable conclusions of law supporting its order denying Rodriguez-Garza's motion to suppress:

- Detective Gonzalez's investigation into the accident "revealed specific articulable facts that, combined with rational inferences from those facts, [led] the detective to conclude that [Rodriguez-Garza] had been engaged in criminal activity."

- Detective Gonzalez was authorized to continue her investigation of Rodriguez-Garza at the police department "given the totality of circumstances and to conduct standard field sobriety tests in a controlled environment and/or complete a breath alcohol concentration examination."

- "Detective Gonzalez had probable cause to believe [Rodriguez-Garza] committed a driving while intoxicated offense."

- "The magistrate, in viewing the probable cause statement, drawing reasonable inferences from facts and circumstances alleged in the affidavit, had a substantial basis for approving the search warrant, and that the search would uncover evidence of wrongdoing."

### D. Analysis

We disagree with Rodriguez-Garza's argument that the trial court erred when it denied her motion to suppress because it failed to disregard allegedly false statements in Detective Gonzalez's search warrant affidavit. *See Hyland*, 574 S.W.3d at 911.

At the outset we note Rodriguez-Garza's written motion to suppress failed to allege any false statements were made warranting the trial court to go behind the affidavit's four corners in a *Franks* hearing. *See id.* at 155–56, 171; *see also Cates v. State*, 120 S.W.3d 352, 355 n.3 (stating that trial court is required to go behind affidavit's four corners during *Franks* hearing only "if a defendant has made a substantial preliminary showing of deliberate falsity"). In this case, we need not go beyond the four corners of the affidavit because Rodriguez-Garza never showed she was entitled to a *Franks* hearing for failure to allege false statements in the affidavit in her motion to suppress. The four corners of the affidavit clearly establish probable cause in this case.

Nevertheless, the trial court conducted a *Franks* hearing. Under *Franks*, the falsity of the statements in a search warrant affidavit must be made either deliberately or with reckless disregard for the truth: "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. Here, Detective Gonzalez explained she checked the refusal under each individual SFST because Rodriguez-Garza's refusal to do any tests until her attorney arrived was interpreted by

Detective Gonzalez as a refusal to do any test regardless of whether each test was named and explained. Although Rodriguez-Garza may not have known exactly which tests Detective Gonzalez was referring to, we cannot conclude the statements in the boiler plate portion of Detective Gonzalez's affidavit averring that Rodriguez-Garza refused each SFST was a deliberate falsity or made with reckless disregard for the truth. *See id.*

As for the statement regarding the DIC-24 statutory warning, we recognize that Detective Gonzalez admitted this was a false statement. However, we do not see how that is relevant to the magistrate's probable cause determination.

And, even if we were to excise the alleged false statements from the affidavit, the remaining portions of the affidavit establish probable cause. The circumstances of the accident itself were particularly probative of the existence of probable cause to search Rodriguez-Garza's blood. Specifically, the accident was at night and the motorcyclist suffered severe injuries. Rodriguez-Garza, however, could not remember exactly what happened other than stating the motorcycle somehow ended up right in front of her. *See e.g., Wiede v. State*, 214 S.W.3d 17, 25–26 (Tex. Crim. App. 2007) (considering relevant facts and circumstances of a vehicular accident when conducting a probable cause analysis).

In addition to taking the accident into consideration, the numerous signs of intoxication detected by Detective Gonzalez during her initial encounter with Rodriguez-Garza and her later interview at the police station provide significant facts supporting the existence of probable cause for a magistrate to issue a search warrant. Detective Gonzalez stated she immediately detected the smell of alcohol on Rodriguez-Garza's breath that became more evident during her later interview. Detective Gonzalez claimed Rodriguez-Garza slurred her speech, adding that it appeared slow, and she sounded thick-tongued. Detective Gonzalez also described in two different places in her

affidavit that Rodriguez-Garza's eyes were pink and glossy and red/pink and glossy. While indicating she was polite, Detective Gonzalez added that Rodriguez-Garza appeared tired and sleepy. Importantly, despite claiming she only drank one beer, Rodriguez-Garza admitted to the consumption of alcohol and being at a sports bar just prior to the accident.

Based on these facts and considering the logical inferences the magistrate might draw, we conclude that the affidavit sufficiently stated probable cause for a search of Rodriguez-Garza's blood. *See Diaz*, 632 S.W.3d at 892; *Hyland*, 574 S.W.3d at 910–11.

Assuming without deciding the information should have been excised from the affidavit, and considering the facts giving rise to probable cause that we discussed in our analysis above, based on the affidavit's four corners, a reasonable magistrate would not have abused its discretion by continuing to find that probable cause existed for the issuance of the search warrant, even if the affidavit had omitted the alleged false facts. *See Hyland*, 574 S.W.3d at 911; *see also Gates*, 462 U.S. at 235–36.

We overrule Rodriguez-Garza's first and second issues.

## CONCLUSION

We affirm the trial court's final judgment of conviction.

Irene Rios, Justice

DO NOT PUBLISH