# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00371-CR

**David Saldana, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NO. D-1-DC-09-904003, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant David Saldana guilty of continuous sexual abuse of a young child and sentenced him to life imprisonment, for which he is not eligible for release on parole. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2012); Tex. Gov't Code Ann. § 508.145(a) (West 2012). Saldana appeals, asking this Court to reverse his conviction and remand for a new trial, asserting that the district court erred in (1) failing to instruct the jury in its charge on the law applicable to the facts of the case as required by article 36.14 of the code of criminal procedure, (2) denying appellant's motion to suppress DNA evidence because the probable cause affidavit was insufficient to support issuance of a search warrant, (3) denying appellant's motion to suppress DNA evidence because the probable cause affidavit contained omissions and false statements made knowingly, intentionally, or with reckless disregard for the truth, and (4) failing to suppress DNA evidence that was obtained in violation of the Fourth Amendment to the U.S. Constitution. We will affirm the district court's judgment.

## BACKGROUND

F.V., who was born on November 5, 1994, testified that Saldana, her uncle, began sexually abusing her when she turned five and continued doing so until after she turned thirteen.[1] F.V. lived in Austin with several relatives in her grandmother's single-family home "on and off for a long time." Saldana and his wife lived in the home's garage, where they had a bed. F.V. did not have her own room in the house. Instead, she sometimes slept in the livingroom, which had a couch, a fold-out mattress, and an additional mattress behind the couch, and sometimes she slept in the garage, in bed with Saldana and his wife, either because it was cooler in the garage than the livingroom or because Saldana asked her to do so. Saldana did not work. F.V. testified that while Saldana's wife was at work or driving other relatives to work or school, Saldana would touch her inappropriately. F.V. testified that for the last four years she lived with Saldana, from sometime in 2004 through August of 2008, when Saldana was arrested, he would have her perform oral sex on him or engage her in anal sex approximately "every other weekend," and threatened that if she refused or if she told anyone about the abuse, he would harm her younger brother or kill her family in front of her. She further testified that when she was around the age of twelve, Saldana began to have vaginal intercourse with her. F.V. became pregnant in March 2008. She testified that Saldana continued to regularly engage her in sexual acts while she was pregnant. F.V. moved to Georgia to live with her mother in September 2008, and delivered a baby girl the following month, shortly after her fourteenth birthday.

---

[1] The facts herein are taken from the testimony admitted at trial.

**DISCUSSION**

In his first issue, Saldana argues that the district court erred in failing to instruct the jury in its charge on the law applicable to the facts of the case as required by article 36.14 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). Specifically, he complains that the charge did not adequately inform the jury that, in order to convict him of continuous sexual abuse of a young child under penal code section 21.02, it could not rely on any act occurring prior to September 1, 2007, the effective date of the statute. The jury charge stated:

> Regarding continuous sexual abuse of a young child, the jury is not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.
>
> . . . .
>
> Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, David Saldana, as alleged in Count I of the indictment, on or about the 1st day of September, 2007, through the 29th day of August, 2008 . . . during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against [F.V.] . . . said acts of sexual abuse having been violations of one or more of the following penal laws . . . then, you will find the defendant guilty of the offense of continuous sexual assault of a young child as alleged in Count I of the indictment and say so by your verdict.

Although Saldana's trial counsel stated at the charge conference, "we have no objections nor do we have any requests for additional instructions," Saldana now complains that the language stating that the jury could consider events occurring "on or about September 1, 2007," rather than on or after that date, rendered the charge incomplete and possibly resulted in depriving Saldana of the protections of the Ex Post Facto Clause of both the U.S. and Texas constitutions. *See* U.S. Const. art. I, § 10;

3

Tex. Const. art I, § 16. He further contends that instructions pertaining to other counts of the indictment, which indicated that the State need not prove the exact dates alleged, but could prove these other offenses were committed at any time prior to the indictment, might have misled the jury.

The State responds that the charge, as written, properly informed the jury of the applicable law in accordance with code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art 36.14 (requiring judge to deliver to jury written charge "setting forth the law applicable to the case"); *Gray v. State*, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004) (charge instructions must "apply the law to the facts adduced at trial"). The State contends that, in any event, any error in the charge did not egregiously harm the defendant. The State emphasizes that the prosecutor repeatedly informed the jury of the proper time frame for abuse that could support a conviction for continuous sexual abuse of a young child. For example, in its closing argument, the State explained that "continuous sexual abuse is a new law . . . . enacted in September of 2007" such that "any act that would have occurred before that, the law wasn't in place and he can't be held accountable for it." The State again reemphasized in its final summation that, to convict Saldana for "[c]ontinuous sexual abuse . . . . [w]e're going to start September 1st of 2007." Thus, the State urges, "the jury was made sufficiently aware that it had to rely on events post September 1, 2007, in reaching a decision on count I."

This Court was confronted with a similar question in *Martin v. State*, 335 S.W.3d 867 (Tex. App.—Austin 2011, pet. ref'd). In that case, the defendant was also indicted for continuous sexual abuse of a child. *Id.* Even though the continuous sexual abuse statute did not become effective until September 2007, the jury charge in that case stated, in part, that the State "is not required to prove the exact dates alleged in the indictment but may prove the offenses, if any, to have

4

been committed at any time prior to the presentment of the indictment." *Id.* at 873. Accordingly, the defendant argued that the "charge permitted the jurors to convict him . . . based on the sexually abusive conduct shown to have occurred before the effective date" of the statute. *Id.* at 873-74. Ultimately, we concluded that the charge was erroneous because the instruction impermissibly provided the jury with a larger chronological net under which it could find the defendant guilty of continuous sexual assault. *Id.* at 875-76.

In light of the analysis in *Martin*, we must conclude that there was error in the jury charge in the present case. Because the charge included the language "on or about September 1, 2007," it impermissibly authorized the jury to convict Saldana for committing continuous sexual abuse of a young child based on conduct occurring prior to the effective date of the governing statute.

Having determined that there was error, we must determine whether the error was harmful. Where, as here, there is no objection to the charge, we will reverse the trial court "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see Martin*, 335 S.W.3d at 874 (applying egregious-harm standard to jury-charge error). Egregious harm is a difficult standard to meet. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). The record must show "actual, not just theoretical, harm to the accused," and we must be able to conclude that the defendant has been "deprived of a fair and impartial trial." *Id.* at 489-90. In determining whether the standard has been met, we must review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 489.

5

As the State observes, the jury was reminded that to find Saldana guilty of continuous sexual abuse of a young child, it had to consider events occurring after September 1, 2007. Saldana suggests in his brief that because the jury heard evidence that Saldana sexually abused F.V. "countless" times before September 1, 2007, Saldana necessarily suffered egregious harm. However, this Court previously determined that evidence of sexual abuse occurring before the effective date of the continuous sexual assault statute can serve as "circumstantial evidence of" a defendant's conduct after the effective date of the statute. *Martin*, 335 S.W.3d at 876. Moreover, in addition to the abuse committed before September 1, 2007, the State introduced evidence that Saldana had committed at least two acts of sexual abuse against F.V. during a period of thirty or more days after September 1, 2007. For example, in response to the question, "during that time period between, say, September of 2007 and the next year, August, 2008, approximately how many times . . . did your uncle try to—or your uncle place his penis on your vagina," F.V. responded, "I'm not sure. A couple of times." F.V. similarly testified that, during that time period, her uncle penetrated her anus with his penis more than twice and placed his penis in her mouth more than twice. She testified at various times that these abuses occurred "every other weekend" or weekly. F.V. also testified that Saldana was the father of her child, who was conceived around March 2008, and she further testified in detail regarding instances of abuse occurring after her pregnancy, when Saldana was concerned as to whether having vaginal intercourse with her might harm the baby. In reviewing the charge, the record, and the parties' arguments, we cannot conclude that Saldana was deprived of a fair and impartial trial or that he showed actual, not just theoretical, harm as a result of any error in the charge. *See Taylor*, 332 S.W.3d at 489-90. We overrule Saldana's first issue.

In his second issue, Saldana urges that the district court erred in denying his motion to suppress DNA evidence because the probable-cause affidavit was insufficient to support issuance of a search warrant. Saldana argues that the affidavit was insufficient because the complainant, F.V., was not named in the affidavit, the affidavit does not allege that F.V. claimed to be pregnant, and the "only sexual contact she described involved no penetration, but rather Appellant's penis moving on her butt cheek and something wet running down between her butt cheeks."

The Fourth Amendment to the U.S. Constitution requires that search warrants be supported by "probable cause." Likewise, article 18.01 of the code of criminal procedure provides that a warrant may be obtained from a magistrate only after submission of an affidavit setting forth substantial facts establishing probable cause. Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2012). Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a fair probability that evidence of a crime will be found in a particular place at the time the warrant is issued. *State v. Jordan*, 342 S.W.3d 565, 568-69 (Tex. Crim. App. 2011). The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners. *Id.* at 569. We give "great deference to a magistrate's determination of probable cause." *Id.* Our duty "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

Detective Carl Satterlee completed the affidavit for search warrant, relying on testimony from F.V. and her obstetrician, Dr. Robert Sorin. The affidavit referred to a "victim" who "is a 13 year old pregnant female who is more fully identified in police report #08-5043932,

7

who is fully described by [Saldana's wife]." Saldana argues that because F.V.'s name is not included in the affidavit itself, she should be considered to be a confidential informant. Saldana further asserts that because she "made no outcry of penetration" and because the only sexual contact she described was an incident in March 2008 that involved no penetration, her statements were inconsistent with the Sorin's statement that "impregnation could occur with minimal penetration of the labia minora." Saldana concludes that F.V.'s statement describing Saldana's past act creates "a mere suspicion that Appellant is also the one who impregnated her, not probable cause." We disagree. Although F.V., as a minor, was not named in the affidavit, her identity was not confidential, and she was easily identifiable. And, the affidavit states that Sorin examined F.V. and confirmed that she became pregnant in March 2008, at or near the time when F.V. alleged she had sexual contact with Saldana. Satterlee further averred that F.V. denied "any other sexual contact with any other individual." Satterlee therefore concluded that "Saldana committed the offense of Aggravated Sexual Assault of a Child . . . in that David penetrated the vagina of a 13 year old female with his penis." Considering the totality of the circumstances set forth in the affidavit, we conclude that the magistrate had a substantial basis for concluding that there was a fair probability that evidence of a crime would be found by collecting DNA evidence from Saldana. We overrule appellant's second issue.

Saldana asserts in his third issue that the district court erred in denying appellant's motion to suppress DNA evidence because the probable cause affidavit contained omissions and false statements made knowingly, intentionally, or with reckless disregard for the truth. Under the United States Supreme Court's decision in *Franks v. Delaware*, an arrest warrant must be voided

8

and any evidence obtained pursuant to the arrest warrant suppressed if (1) the defendant can establish by a preponderance of the evidence that the affidavit supporting the warrant contains a material misstatement that the affiant made knowingly, intentionally, or with reckless disregard for the truth; and (2) setting the false statement aside, the affidavit's remaining content is insufficient to establish probable cause. *Franks*, 438 U.S. 154, 155-56 (1978); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996).

Saldana alleges, and it is undisputed, that F.V. told Satterlee that she was a virgin and that Saldana had not had penetrated her vagina. Saldana argues that because Satterlee was aware of this statement, Satterlee's statement that F.V. made "no outcry of penetration" created "a false belief complainant was mum on that point, rather than denying it," and thus constituted a false statement made knowingly, intentionally, or with reckless disregard for the truth. Saldana also suggests that Sorin's statement that pregnancy could be caused with "minimal penetration" shows F.V. must have been lying. He further argues that if Satterlee believed F.V.'s statement that Saldana never penetrated her vagina, then he did not have probable cause for asserting in the affidavit that Saldana "penetrated the vagina of a 13 year old female with his penis." As such, Saldana concludes that if Satterlee believed "that Appellant never penetrated her," then "the affidavit asserting probable cause to believe Appellant inserted his penis in her vagina could not have been based on her pregnancy, as the detective claimed, given his understanding from Dr. Sorin that some minimal penetration is required for impregnation." These alleged misrepresentations, Saldana contends, render the search warrant "a nullity and the DNA evidence should have been suppressed."

9

The trial court held a hearing on Saldana's motion to suppress, and Satterlee testified at that hearing. Satterlee testified that he did not consciously or purposely omit F.V.'s claim that she was a virgin and that Saldana had never penetrated her vagina. He further explained that F.V. never defined what she meant when she used the terms "sexual intercourse," "penetration," and "virginity," but she was very concerned with being considered "pure." He averred that he based his affidavit not only on his interview with F.V., but also on his interview with Sorin, who confirmed that F.V. was pregnant and that she had become pregnant in March 2008, at or near the time when she alleged that she had sexual contact with Saldana. After hearing Satterlee's testimony, the district court did not find that any misrepresentations were made in the affidavit, noting that "the officer does lay out within the search warrant that she made no outcry of penetration, though she has been impregnated, and denied any other sexual contact." The State points out that the statement that F.V. made no outcry of penetration is true and argues that the magistrate could draw reasonable inferences that "the event described with the appellant was connected to the victim's pregnancy, constituting a crime, and that a search would yield evidence of wrongdoing." We agree. In light of the testimony at the hearing on the motion to suppress, we conclude that the trial court correctly determined that Saldana's claim that the affidavit contained a false statement was not supported by a preponderance of the evidence. Moreover, the evidence of F.V.'s pregnancy, coupled with the description of her encounter with Saldana, which occurred around the time when Sorin concluded that F.V.'s child was conceived, and F.V.'s statement that she had no sexual contact with any other person would not have been insufficient, even absent the statements challenged by Saldana, to constitute probable cause. *See Franks*, 438 U.S. at 155-56. We overrule Saldana's third issue.

10

In his last issue, Saldana argues that the district court erred in failing to suppress DNA evidence that was obtained in violation of the Fourth Amendment to the U.S. Constitution. Because we have concluded that the district court properly denied the motion to suppress, such that the DNA evidence was not obtained in violation of the Fourth Amendment, we need not address this issue.

## CONCLUSION

We affirm the district court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Rose

Affirmed

Filed:  August 31, 2012

Do Not Publish

11