**AFFIRMED; Opinion Filed October 31, 2018.**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00513-CR

### KENNETH ALAN AMYX, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82168-2016**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

Kenneth Alan Amyx appeals his conviction for murder. The trial court assessed punishment at life imprisonment. In two issues, appellant contends that the trial court erred in denying his motion to suppress electronic devices seized from the crime scene and recorded jail calls. Appellant also contends that he received ineffective assistance of counsel during the punishment phase of trial. We affirm the trial court's judgment.

### BACKGROUND

On May 29, 2016, Jennifer Spears died because appellant killed her as the result of what appellant claimed was their agreement to commit suicide together. The evidence shows that appellant and Spears had been living together since January 2016. Family and friends were not aware of the relationship because appellant was a fugitive with an arrest warrant from Rockwall

County for sexual assault offenses committed against his daughter. On the morning of May 29, photographs depicting Spears and appellant covered in blood from neck wounds were posted on Facebook and sent by appellant in text messages to Spears's mother. Appellant told Spears's mother that he was staying with Spears and that they had agreed to commit suicide together. Both family and friends immediately contacted the police. When the Plano officers went to Spears's apartment, they found Spears lying on her back in the bedroom doorway, naked and covered in blood with a large slash wound to her neck. Appellant was naked, covered in blood, and lying face-down on top of Spears, holding a knife in one hand, and Spears's hand in his other hand. Although the officers initially believed both were dead, they discovered that appellant was still alive after he began to prop himself up off the floor and attempted to retrieve a knife that was between the two bodies. Once the officers removed the second knife from appellant and placed him in handcuffs, they observed a large slash on his neck that was bleeding. Both officers and paramedics administered basic trauma care to appellant at the apartment and then took him to the hospital.

At the scene, appellant told officers that he and Spears had decided to kill themselves but that "She chickened out on me, so I tried to do more myself." During the ride to the hospital, appellant made several comments, telling the Lord to "take him" and asking the medical personnel in the ambulance to "just let him die." At the hospital, appellant spoke to Detective Hay and told him about the sexual assault charges and warrant out of Rockwall County. He also told the detective that they had been planning to kill themselves for months and had tried a couple of times before but had backed out. Appellant then explained the events of that morning – how he and Spears got drunk and went back and forth cutting each other, and then, based on her request to "hit me hard," how he pushed the knife hard into Spears's neck one last time, leaving her bleeding and too weak to do anything else. He also told the detective that he posted pictures of their bloody

bodies on Facebook, sent the pictures to her mother via text message, and then talked to her mother on the phone.

## ANALYSIS

### I.     Search Warrant

In appellant's first issue, he contends that the trial court erred by denying the motion to suppress the search of the electronic devices seized from the apartment because the search warrant affidavit failed to establish probable cause to support the belief that "any electronic devices were used prior to, during, or immediately after the alleged offense . . . or that those items do or might possibly contain such evidence."  In his brief, appellant does not specify which evidence should have been excluded.  However, during trial, appellant told the court that all he was seeking to exclude was the CDs, the CD case, the search of the CDs,[1] and the search of appellant's phone. Appellant also objected to the admission of two photographs of appellant and Spears which were retrieved from Spears's computer.  The State did not offer appellant's phone or any information derived from his phone into evidence.

A search warrant may not issue unless it is based upon probable cause, established by a sworn affidavit.  U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2017); *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011).  The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).  Probable cause exists if, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place at the time the warrant is issued.  *Jordan*, 342 S.W.3d at 568–69.

---

[1] Throughout most of the record, and in appellant's motion to suppress, the CDs that were seized were referred to as DVDs.  Therefore, in this opinion, the CDs will be referred to as the DVDs.

–3–

We typically apply a bifurcated standard of review to a trial court's ruling on a motion to suppress by giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of law. *State v. McLain,* 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, where, as here, a motion to suppress is based solely on a magistrate's decision to issue a warrant, there are no credibility determinations to which we must defer because the trial court is constrained to the four corners of the affidavit. *See State v. Webre,* 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.). Nevertheless, in reviewing the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *McLain,* 337 S.W.3d at 271; *see Illinois v. Gates,* 462 U.S. 213, 236 (1983). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.* In doubtful or marginal cases, the magistrate's determination should prevail. *Flores v. State,* 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners. *Jordan,* 342 S.W.3d at 569. The focus is not on what other facts could or should have been included in the affidavit; rather, the focus is on the combined logical force of facts that are actually in the affidavit. *Duarte*, 389 S.W.3d at 354–55.

### A.    CD case and CDs/DVDs

Appellant argues that the search warrant affidavit does not contain any factual assertions that will support issuing a warrant for electronic devices. The State argues that regardless of whether the affidavit established probable cause to search for and seize electronic devices, the affidavit contained facts sufficient to establish probable cause that appellant committed sexual

assault of a child, and that the CD case and its contents contained evidence of that crime. We agree with the State.

First, the affidavit specifically described the CD case and its location on the bookshelf in the portion of the affidavit setting forth property or items constituting evidence relating to a sexual assault of a child investigation and in Attachment B of the affidavit listing the items to be taken from the apartment.

Second, after setting forth facts relating to the discovery of Spears's dead body, and appellant's role in her death, the affidavit stated the following:

> Affiant learned from Detective Martinez that Amyx had an active warrant for Sexual Assault of a Child out of Rockwall, Texas. Affiant also learned from Detective Martinez that Amyx told Officer Bass at the scene about a black case on the top shelf of a book shelf inside the apartment. Amyx told Officer Bass that evidence directly related to the Sexual Assault of a Child offense was contained inside the black case he described. Detective Martinez told Affiant he personally observed a rectangular black case on a book shelf inside the apartment adjacent to the kitchen that matched the description given by Amyx.

We conclude that the circumstances stated in the affidavit as set forth above provided the magistrate with a substantial basis to conclude that the CD case and its contents contained evidence of a sexual assault offense committed by appellant. The affiant had learned that there was an active warrant for appellant's arrest for charges of sexual assault of a child and appellant's statement to the police about the CD case containing evidence related to the sexual assault offense constituted a statement against penal interest. *See Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983) (declarations against penal interest is at least one factor indicating reliability); *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (same). Further the CD case described by appellant was identified by an officer on the scene as being in the place in the apartment appellant indicated it would be.

Appellant also contends that the warrant did not authorize the search of the DVDs contained in the case. The record shows that a separate warrant was issued to search the content of the DVDs contained in the case. Appellant does not challenge the validity of that warrant.

**B.      Photographs**

Two photographs retrieved from Spears's computer were also admitted into evidence over appellant's objections regarding the warrant. At trial, the State argued that appellant did not have standing to contest the search of Spears's computer. Appellant argued that standing was shown by the fact that appellant "was residing in the apartment and that the reasonable inference is that he had access to and use of these items and would have an interest in them in that regard."[2]

Assuming, without deciding, that appellant had standing to contest the search of Spears's computer, we conclude that any error in admitting the photographs was harmless. The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is governed by the constitutional standard set forth in TEX. R. APP. P. 44.2(a). Under that standard, we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *Id.*

The first photograph is a picture of appellant's face. The second photograph is a picture of appellant and Spears together in a public place smiling. Neither photograph depicts prejudicial conduct, nor are they inflammatory or gruesome. Further, improper admission of evidence does not constitute reversible error if the same fact was shown by other admissible evidence. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010). Prior to the introduction of these photographs, a photograph of Spears was introduced without objection through the testimony of

---

[2] We note that prior to these photographs being offered into evidence, appellant's interview with Detective Hays at the hospital was admitted into evidence and published to the trial court. During that interview, appellant gave the detective user names and passwords for Spears's email and Facebook accounts which is some indication that appellant also had access to the computer. However, appellant's counsel never referred to this evidence in making his argument regarding appellant's standing to contest the search.

her longtime friend, Jennifer Hallman. In addition, Hallman testified that after Spears's death, she learned that Spears and appellant had been living together. Appellant also told Detective Hay that Spears was his girlfriend and that they had been living together. A photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). A picture of appellant and a second picture of Spears and appellant together was consistent with that testimony. Under these circumstances, we conclude beyond a reasonable doubt that the admission of these photographs did not contribute to appellant's conviction.

We overrule appellant's first issue.

## II.     Jail Call

In appellant's second issue, he contends that the trial court abused its discretion in overruling appellant's motion to suppress a recording of a phone conversation between appellant and his father while he was in the Collin County jail because it constituted an illegal interception in violation of the federal and state wiretapping statutes.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) (per curiam). In conducting this review, appellate courts employ a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to a trial court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor, but we review de novo mixed questions of law and fact that do not turn on credibility and demeanor. *Id.* We view the evidence in the light most favorable to the trial court's ruling, regardless of whether the trial court granted or denied the motion to suppress. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). Therefore, we afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. *Id.*

Under the Texas exclusionary rule, evidence obtained in violation of state or federal law may not be admitted against the accused in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Both Texas and federal law prohibits a person from intentionally intercepting a "wire, oral or electronic communication." TEX. PENAL CODE ANN. section 16.02 (West Supp. 2017); 18 U.S.C.A. § 2511 (West 2015). A communication intercepted in violation of § 16.02 of the penal code is inadmissible as evidence against a defendant. TEX. CODE CRIM. PROC. ANN. art. 18.20 § 2 (West Supp. 2017). Under both Texas and federal law, the interception of a communication is not unlawful if one of the parties to the communication has given prior consent to the interception. TEX. PENAL CODE ANN. § 16.02(c)(4)(A) (West Supp. 2017); 18 U.S.C.A. § 2511(2)(c)-(d) (West 2015).

The recording (State's Exhibit 54) of appellant's phone call to his father was offered into into evidence through Robert Valderrama, an employee of Securus Technologies, the company that provided software and telephone systems to the corrections industry. Valderrama's office was in the Collin County Sheriff's Office and he was in charge of the phone system at the Collin County jail. Valderrama testified to the procedures an inmate must go through in order to make a phone call, which included the entry of phone pin number in order to identify the inmate to their custody account. Valderrama testified that before the call is connected, both parties are told that their call may be recorded and monitored. At that point, the person receiving the call has three options – accept the call, hang up the call, or block their phone number from any future calls from the sending number. During questioning from appellant's attorney, Valderrama testified that neither the inmate nor the person receiving the call had the option of declining the recording of the call; if a call was made from the jail, it would be recorded. Appellant's objection to the admission of the recording was overruled by the trial court.

Consistent with Valderrama's testimony, Exhibit 54 starts out with an announcement that it is a prepaid collect call from Ken (appellant), an inmate at Collin County detention facility. The recording next contains the statement that the call is subject to recording and monitoring and instructs the receiving party to press one to accept charges or press two to refuse charges. The announcement continues by starting to instruct the receiving party what to do if they want to permanently block their number from receiving calls from the inmate; however, before the instruction was stated completely, appellant's father affirmatively accepted the call, the parties are thanked for using Securus and instructed that they may start the conversation.

Appellant's contention that the call was illegally intercepted and recorded is based on the fact that neither appellant nor his father expressly consented to the call being recorded. Although appellant acknowledges that this Court and other Texas courts of appeals have addressed the admissibility of jail calls and have held that there is no violation of section 16.02 as long as the appellant had notice that jail calls may be recorded, he argues that those cases were wrongly decided because they relied upon the reasoning that the prior consent required under the statute can be implied. *See Banargent v. State*, 228 S.W.3d 393, 402–04 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Escalona v. State*, No. 05-12-01418-CR, 2014 WL 1022330, at *10 (Tex. App.—Dallas, Feb. 20, 2014, pet. ref'd) (mem. op., not designated for publication); *Jones v. State*, No. 07-12-00496-CR, 2013 WL 3874710, at *1 (Tex. App.—Amarillo July 19, 2013, pet. ref'd) (mem. op., not designated for publication); *see also Siddiq v. State*, 502 S.W.3d 387, 394 (Tex. App.—Fort Worth 2016, no pet.). Appellant cites the court of criminal appeals' decision in *Baird v. State* for the proposition that the legal definition of consent in section 1.07(11) of the penal code precludes the notion that consent may be implied under section 16.02. *Baird v. State*, 398 S.W.3d 220, 228–30 (Tex. Crim. App. 2013). We are not persuaded by appellant's argument or his interpretation of the decision in *Baird.*

Section 1.07(11) of the penal code states: "Consent" means assent in fact, whether express or apparent. TEX. PENAL CODE ANN. § 1.07(11) (West Supp. 2017). In *Baird*, the court analyzed what the definition of "consent" in the penal code meant by "assent in fact" that is "apparent" as opposed to "express" and concluded that the word "apparent" as it appears in section 1.07(11) means "assent in fact that, while not communicated expressly, is no less "clear and manifest to the understanding" for not having been explicitly verbalized." *Baird*, 398 S.W.3d at 228–30. We interpret this to mean that consent, if not explicitly verbalized, can nevertheless be shown by a person's response to the options given them. In other words, a person's consent to their phone call being recorded can be manifested by the fact that they chose to make the call or accepted such call after having been notified that the call will be recorded.

Under the facts of this case, and the decision in *Baird*, we find no basis for reaching a result different than the result reached by the court of appeals in *Banargent*, 228 S.W.3d at 402–04, or by this Court in *Escalona*, 2014 WL 1022330 at *10. Just as in those cases, in this case there was a prompt at the beginning of appellant's phone call notifying both the appellant and his father that the call was subject to recording and monitoring. If either appellant or his father did not want their call to be recorded, they had the option of hanging up before they started their conversation. Further, appellant's father also had the option of forever blocking any calls from appellant's inmate account. By appellant choosing to make the call, and appellant's father accepting the call when both of them knew that it would be recorded, both parties manifested an agreement to the recording being made and thus, consented to the recording.

Further, the law-enforcement exception to the Texas and federal wiretap statutes[3] also applies to appellant's recorded jail call. In *Siddiq v. State*, the court of appeals held that the law-

---

[3] "The term [electronic, mechanical or other device] does not include a telephone or telegraph instrument . . . used for the transmission of electronic communications if the instrument . . . is being used by an investigative or law

enforcement exception is applicable to recordings by law enforcement of phone calls from jails or detention centers when the recordings are routinely made pursuant to a policy that results in the recording of all calls, rather than a particular call being singled out for recording. *Siddiq,* 502 S.W.3d at 393–94, 396. Valderrama's testimony established that a policy existed in which all calls made in the Collin County jail by inmates were recorded.

We conclude that the trial court did not abuse its discretion by admitting the recorded phone call between appellant and his father over appellant's objections that it violated the federal and state wiretapping statutes. We overrule appellant's second issue.

## II. Ineffective Assistance of Counsel

In appellant's third issue, he contends that he was denied the effective assistance of counsel due to trial counsel's failure to present any defense or mitigating evidence on behalf of appellant during the punishment phase of trial. Specifically, appellant claims that counsel failed to investigate and present evidence of appellant's mental health history despite the fact appellant's competency was called into question prior to trial and appellant's testimony during the punishment hearing referenced several hospitals he had been treated for mental health issues. Appellant also claims that counsel failed to call his mother or his friend to present mitigating evidence despite the fact that both were present in the courtroom.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant has the burden to establish both prongs

---

enforcement officer in the ordinary course of the officer's duties." *See* TEX. CODE CRIM. PROC. ANN. art. 18.20 § 1(4)(D) (West Supp. 2017); 18 U.S.C.A. § 2510(5)(a)(ii) (West 2015).

by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

On this record, appellant cannot show that counsel's performance during the punishment hearing was deficient. After the State presented its punishment evidence and rested, appellant's counsel announced that he was going to call some witnesses. However, before counsel proceeded, the court took a forty-five minute lunch break. Following the lunch break, counsel called appellant to testify. During the initial questioning, the following occurred:

Q. You understand that you have the absolute right not to testify in this punishment part of your trial, you understand that right?

A. Yes, sir.

Q. Have you and I discussed that right?

A. Yes, we have.

Q. And I'm not asking you to repeat what my advice is but have I given you advice regarding whether you should testify or not? Have I given you advice about that?

A. Yeah, you've given me plenty of advice.

Q. All right. And so knowing that you have the right to remain silent, you insisted upon testifying; is that right?

A. Yes, I'm waiving my rights.

Q. All right. And you understand that after I ask you questions the Prosecutor, if they want to, can ask you questions?

A. Yes, they can reexamine.

Q. All right. Now, during the course of this trial, you and I have had various meetings where we'll meet in what I call the holdover area; is that true?

A. Yes, it is.

Q. And, again, not to give any details of it, but you and I have been able to discuss the case; its progress; what witnesses are saying; that type of thing; we've been able to visit, right?

A. Yes, sir.

Q. And you understand right now the Court has determined and found that you are guilty of the offense of murder; you understand that?

A. Yes, I do.

Q. And the only issue before the Judge right now is, he has a job to do, which is to determine your punishment or assess a sentence against you.

A. Yes, he does.

Q. All right. And you understand the Judge must assess your punishment somewhere between five years up to 99 years or life, you understand that?

A. I understand that, yes.

Q. All right. Now, Mr. Amyx, you also understand that in addition to your testimony, that the Judge will give us – as long as we're bringing forward relevant information, he will give us a lot of time to call witnesses, present documents –

A. I understand. There's no need for all that.

Q. All right. Have you instructed me that the only defense you want to put on in this punishment phase of the trial is your testimony?

A. My testimony from here on out.

Q. All right.

A. I won't need anymore witnesses or prosecuting.

Q. All right. So the Court now can consider information regarding your background.

. . .

Counsel's initial announcement to the trial court that he was going to call some witnesses, together with his initial questioning of appellant wherein appellant testified that he had instructed counsel not to present any punishment evidence other than his own testimony, clearly shows that counsel's failure to present additional mitigating evidence resulted from appellant's own decision to forego the presentation of such evidence and not from a failure to investigate and present

–13–

mitigating evidence. Trial counsel cannot be declared ineffective for simply abiding by his client's wishes. *See Posey v. State*, 763 S.W.2d 872, 877 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) ("Trial counsel simply complied with his client's wishes and cannot be held accountable for appellant's decisions."); *Purchase v. State*, No. 01-07-00738-CR, 2008 WL 596848, at *7 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (mem. op., not designated for publication) (same); *Crofton v. State*, No. 14-02-00422-CR, 2003 WL 21710439, at *8 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (mem. op., not designated for publication) (same); *see also Strickland*, 466 U.S. at 690 (When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or harmful, "counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Since appellant had failed to satisfy the first prong of the Strickland test, we need not consider the requirements of the second prong. We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
170513F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH ALAN AMYX, Appellant

No. 05-17-00513-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82168-2016.
Opinion delivered by Justice Evans, Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of October, 2018.